UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

LINDA PEACOCK                                               MISCELLANEOUS ACTION

VERSUS

BURNEY H. MERRILL, ET AL                         NO. 08-01-B-M2

### RULING & ORDER

This matter is before the Court on the Motion to Compel Compliance with Subpoena (R. Doc. 1) and related Motion for Oral Argument (R. Doc. 5) filed by plaintiff, Linda Peacock ("Peacock"). Thomas W. Kleinpeter, C.P.A. and Thomas W. Kleinpeter, Jr., Inc. (collectively "Kleinpeter"), to whom the subpoena in question was directed, have filed an opposition (R. Doc. 4) to Peacock's motion.

### FACTS & PROCEDURAL BACKGROUND

The present motion relates to litigation currently pending in the Southern District of Alabama, Southern Division, captioned *Linda Peacock v. Burney H. Merrill, et al*, Case No. 1:05-377-BH-C ("underlying litigation"). The underlying litigation arose out a dispute over the ownership of a fifteen percent (15%) interest in four (4) privately-held companies, referred to as the Floragan Companies. In her complaint in that matter, Peacock alleges that she purchased that 15% interest from her ex-husband, Marion Uter ("Uter"). She contends that, after her purchase, the other owners in the companies conspired against her to "retroactively reallocate" the ownership interests in the companies,[1] thereby preventing

---

[1] According to Peacock, such "retroactive reallocation" involved the owners instructing the corporate accountant to eliminate Uter as a shareholder/owner from the Federal Tax returns for the year 2001.

1

her from asserting her ownership interest in the companies when they were sold to a Canadian lumber company for $50,000,000.00.[2]

The issue in this miscellaneous action is a Rule 45 subpoena that Peacock had this Court issue to Kleinpeter on December 18, 2006, requesting the production and inspection of documents relating to services allegedly performed by Kleinpeter as an accountant for Uter and other named entities, including Coral Resources, Inc., Coral Resources Holding, Inc., and their affiliates. Kleinpeter, through his counsel, objected to the subpoena on January 19, 2007, on the ground that the documents sought are subject to the accountant-client privilege. With that objection, Kleinpeter's counsel produced a "generic description of the documents [Kleinpeter] has in the form of a Privilege Log." On November 13, 2007, counsel for Peacock sent correspondence to Kleinpeter's counsel again requesting copies of the documents sought by the subpoena and a more detailed privilege log. Kleinpeter's counsel responded to Peacock's counsel on November 16, 2007, advising that Kleinpeter was instructed by "his client" not to produce the documents requested by the subpoena, and no additional privilege log was provided. Peacock then filed the present motion on January 11, 2008, seeking production of the subpoenaed documents because of their "great import" to the underlying action. Specifically, Peacock contends that such

---

[2] There is also an allegation that Coral Resources, Inc., a Louisiana corporation, owned 45% of the Floragon Companies and sold that interest to the named defendants in the underlying litigation (which consist of the four Floragon companies and three Florida shareholders, Burney Merrill, Collier Merrill, and Willis Merrill, III). The Merrills contend that they sold, by oral agreement, an option to Uter to buy 15% of the Floragon Companies as part of the Merrills' purchase of 45% of the Floragon Companies from Coral Resources. The Merrills further assert that Uter never paid for his option and therefore never owned the Floragon stock he later sold to Peacock. The Floragon companies and the Merrills thus refuse to recognize Peacock's alleged ownership interest in 15% of the stock.

documents "may shed light on Uter's previous ownership in the Floragon Companies," which is "critical to a determination of [her] rights."[3] [4]

## LAW & ANALYSIS

Louisiana Code of Evidence article 515 provides for a privilege between an accountant and his/her client relative to confidential communications. That article provides in pertinent part:

> A client has a privilege to refuse to disclose, and to prevent another person from disclosing, a confidential communication, whether oral, written, or otherwise, made for the purpose of facilitating the rendition of professional accounting services to the client, as well as the perceptions, observations, and the like, of the mental, emotional, or physical condition of the client in connection with such communication. This privilege includes the protection of other confidential information or material obtained by the accountant from the client for the purpose of rendering professional services. This privilege exists when the communication is:

---

[3] She contends that the documents subpoenaed from Kleinpeter should reveal Uter's ownership interest in the Floragon Companies that he allegedly sold to her because Kleinpeter prepared and filed tax returns on Uter's behalf reflecting not only that ownership interest but also Uter's transfer of that interest to Peacock and his alleged (and subsequent) transfer of that interest to the Merrill defendants (after he had already sold the interest to Peacock). Peacock further asserts that Kleinpeter's work papers should show payment from the Merrill defendants or their companies as consideration for the stock purchase.

[4] Peacock's counsel notes that he has attempted on numerous occasions to obtain documents directly from Uter, which definitively reflect the purchase and ownership of his stock, to no avail. Peacock's counsel has even filed a Motion for Contempt in the underlying action on November 19, 2007, seeking to hold Uter in contempt for his failure to produce documents as mandated by the court in granting Peacock's motion to compel in the underlying litigation. Additionally, Uter has instructed at least one of his other accountants not to produce any documents in response to the subpoenas.

documents "may shed light on Uter's previous ownership in the Floragon Companies," which is "critical to a determination of [her] rights."[3] [4]

## LAW & ANALYSIS

Louisiana Code of Evidence article 515 provides for a privilege between an accountant and his/her client relative to confidential communications. That article provides in pertinent part:

> A client has a privilege to refuse to disclose, and to prevent another person from disclosing, a confidential communication, whether oral, written, or otherwise, made for the purpose of facilitating the rendition of professional accounting services to the client, as well as the perceptions, observations, and the like, of the mental, emotional, or physical condition of the client in connection with such communication. This privilege includes the protection of other confidential information or material obtained by the accountant from the client for the purpose of rendering professional services. This privilege exists when the communication is:

---

[3] She contends that the documents subpoenaed from Kleinpeter should reveal Uter's ownership interest in the Floragon Companies that he allegedly sold to her because Kleinpeter prepared and filed tax returns on Uter's behalf reflecting not only that ownership interest but also Uter's transfer of that interest to Peacock and his alleged (and subsequent) transfer of that interest to the Merrill defendants (after he had already sold the interest to Peacock). Peacock further asserts that Kleinpeter's work papers should show payment from the Merrill defendants or their companies as consideration for the stock purchase.

[4] Peacock's counsel notes that he has attempted on numerous occasions to obtain documents directly from Uter, which definitively reflect the purchase and ownership of his stock, to no avail. Peacock's counsel has even filed a Motion for Contempt in the underlying action on November 19, 2007, seeking to hold Uter in contempt for his failure to produce documents as mandated by the court in granting Peacock's motion to compel in the underlying litigation. Additionally, Uter has instructed at least one of his other accountants not to produce any documents in response to the subpoenas.

     (1)    Between the client or a representative of the client and the client's accountant or a representative of the accountant.

     (2)    Between the accountant and a representative of the accountant.

     (3)    By the client or his accountant or a representative of either, to an accountant or lawyer, or representative of an accountant or lawyer, who represents another party concerning a matter of common interest.

     (4)    Between representatives of the client or between the client and a representative of the client.

     (5)    Among accountants and their representatives representing the same client.

     (6)    Between representatives of the client's accountant.

LSA-C.E. art. 515(B).

A "confidential communication" for purposes of the accountant-client privilege is any communication not intended to be disclosed to persons other than:

     (a)    Those to whom disclosure is made in furtherance of obtaining or rendering professional accounting services for the client.

     (b)    Those reasonably necessary for the transmission of the communication.

     (c)    When special circumstances warrant, those who are present at the behest of the client and are reasonably necessary to facilitate the communication.

LSA-C.E. art. 515(A)(5).

It is undisputed that Kleinpeter prepared and filed tax returns and/or performed other limited accounting work for Uter and for Coral Resources, Inc. ("CRI"), Coral Resources

Holding, Inc. ("CRH"), Coral Resources Holding Investments, L.L.C. ("CRHI") (collectively "Coral Resources companies"), and their affiliate, Coastal Land and Timber L.L.C. Thus, LSA-C.E. art. 515 is applicable to communications involving Kleinpeter and those clients to the extent the communications are "confidential" for purposes of that article. Kleinpeter contends that all of the documents in his files pertaining to those clients are privileged under Article 515 because they were provided to him in order to obtain professional accounting services and were not intended to be disclosed to any other persons, and he has listed those documents in his privilege log. He further explains that he has contacted Thomas Brown, the agent and representative of the Coral Resources Companies, who has instructed him not to produce the requested documents.[5]

Peacock, however, argues that Kleinpeter has included a number of documents on his privilege log which, based upon the simple descriptions contained therein, do not appear to be privileged. For example, Peacock refers to a number of documents transmitted between Kleinpeter's firm and third parties, such as the Secretary of State, unidentified banks, and taxing authorities, which she contends would not meet the definition of "confidential communications" under Article 515. Additionally, she argues that the privilege log does not adequately describe all of the documents in question. For example, there are references to property purchases in the privilege log, for which no further description is made.

---

[5] Kleinpeter further indicates that he has no interest in the underlying litigation, and the documents sought by the subpoena are being withheld principally as a professional precaution because he is "duty bound to protect the privacy of his clients and their personal information."

A privilege log produced pursuant to Fed. R. Civ. P. 45(d)(2) should not only identify the date, the author, and all recipients of *each document* listed therein, but should also "describe the document's subject matter, purpose for its production, and specific explanation of why the document is privileged or immune from discovery." [Emphasis added.] *Jones v. Hamilton County Sheriff's Dept.*, 2003 WL 21383332, at *4 (S.D. Ind. 2003); *Compaq Computer Corp. v. Packard Bell Electronics, Inc.*, 163 F.R.D. 329, 338 (N.D. Cal. 1995).[6] Those categories of information, especially the last category, should be "sufficiently detailed" to allow the opposing party and the court to determine whether the withholding party has satisfied its burden of demonstrating the existence of the claimed privilege, and a generalized description of a document, which includes a conclusory statement that the document is subject to a particular privilege, is insufficient. *Id.*; *Haensel v. Chrysler Corp.*, 1997 WL 537687, at *4 (E.D. La. 1997); *See also, Gail v. New England Gas Co., Inc.*, 243 F.R.D. 28 (D.R.I. 2007).[7]

---

[6] *See,* Fed. R. Civ. P. 45(d)(2)(a)(When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim "shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim").

[7] *See also, Standard Servs. Co., Inc. v. Witex USA, Inc.*, 2003 WL 1873087, *2 (E.D.La. 2003)(A privilege log must contain a "detailed description of the contents of each document, including the page numbers, date, description, originator, recipients and the nature of the privilege asserted); *Johnson v. Bryco* Arms, 2005 WL 469612 (E.D.N.Y. 2005)(When a party withholds information otherwise discoverable under the Federal Rules by claiming that the information is privileged or subject to protection as trial preparation material, the party shall make the claim expressly and "shall describe the nature of the documents, communications, or things not produced or disclosed in a manner that, without revealing the information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection." This description should "identify each document and the individuals who were parties to the communications, providing sufficient detail to permit a judgment as to whether the

The Court's review of the privilege log produced by Kleinpeter indicates that it provides only generic descriptions of the documents alleged to be privileged.[8]  The log does not identify specific documents by date, author, recipient, and subject matter and is therefore insufficient.  Moreover, based upon the generic descriptions currently contained in the log, it appears that certain of the documents may not be "confidential" because they were produced to third parties.  Without further detail in the privilege log, it is not possible for Peacock to legitimately contest the asserted privilege and for the Court to rule intelligently upon whether the claim of privilege should be sustained.  *Marx v. Kelly, Hart & Hallman*, 929 F.2d 8, 12 (1st Cir. 1991)(Assertion of privilege "must also be accompanied by sufficient information to allow the court to rule intelligently on the privilege claim"); *Tuite v. Henry*, 98 F.3d 1411, 1416-17 (D.C.Cir. 1996)(discussing similar requirement under Fed. R. Civ. P. 45).

Accordingly, rather than rule that the documents in question are not privileged as a result of the inadequate descriptions in Kleinpeter's privilege log, the Court will order that Kleinpeter produce a supplemental privilege log relative to the requested documents, wherein he identifies not only the date, the author, and all recipients of *each document* listed therein, but also describes the document's subject matter, purpose for its production,

---

document is at least potentially protected [from] disclosure").

[8] Kleinpeter fails to identify documents individually and instead lumps them into broad categories with vague descriptions, such as "Memos of communications concerning tax matters;" "Copies of bank statements for the year 2000;" "Copy of a promissory note payable; "Copy of an assignment of proceeds;" and "Research concerning tax questions," among others.

and a specific explanation of why the document is privileged or immune from discovery.[9]

If, after such supplemental privilege log is produced, Peacock still contends there are certain documents listed therein to which the accountant-client privilege is inapplicable, it can file a new motion in reference to those documents, and at that point, the Court will conduct an *in camera* inspection of the subject documents to determine whether they are

---

[9] Since, upon service, Kleinpeter objected to the subpoena and provided a log in an effort at preserving his claims of privilege, even if that log is insufficient, the Court will not impose the harsh sanction of waiver of privilege at this time.  The failure to submit an adequate privilege log does not automatically result in a waiver of the claimed privileges.  *See, Johnson v. Bryco* Arms, 2005 WL 469612 (E.D.N.Y. 2005)(Where a party fails to comply with the requirement of submitting an adequate privilege log, the claim of privilege "may be denied"); *Dorf & Stanton Communications, Inc. v. Molson Breweries*, 100 F.3d 919, 923 (Fed. Cir. 1996)(Failure to submit a privilege log *may* be deemed a waiver of the underlying privilege claim).

Of relevance to the determination of whether the failure to produce a sufficient privilege log should result in a waiver of the claimed privilege is "the nature of the violation, its willfulness or cavalier disregard for the rule's requirements, and the harm which results to other parties." *AFP Imaging Corp. v. Philips Medizin Sys.*, 1993 U.S. Dist. LEXIS 18234, at *7 (S.D.N.Y. 1993).  The Court does not find that Kleinpeter's failure to submit complete descriptions of the documents in his privilege log was in the nature of a willful and cavalier disregard for the requirements of Fed. R. Civ. P. 45. Furthermore, the Court agrees with Kleinpeter that documents containing the ownership information sought would be more appropriately obtained directly from the primary sources, Uter and the Coral Resource entities, in the context of the underlying litigation, rather than indirectly from their accountant, Kleinpeter, who has no interest in that litigation and believes himself to be professionally obligated to maintain the accountant-client privilege and not produce the documents in question, as he has been directed to do by his client.  Peacock has not advised the Court as to the outcome of her pending Motion for Contempt filed against Uter in the underlying litigation on November 19, 2007 based upon his failure to produce the documents revealing the ownership information in question.  Additionally, Peacock indicates in her present motion that she has not yet even filed a motion to compel regarding a subpoena directed to Coral Resources to obtain the ownership information in question.  Thus, as far as the Court knows, there is still a possibility that Peacock can obtain the information at issue directly from Uter and Coral Resources.  Given that possibility, the Court does not find that Peacock will be harmed by allowing Kleinpeter the opportunity to submit a supplemental privilege log to clarify his assertions of the accountant-client privilege.

indeed privileged.[10]

The Court also finds that Peacock's request for court costs and attorney's fees in connection with this motion should be denied, as Fed. R. Civ. P. 45, dealing with the issuance of and response to subpoenas directed to non-parties, does not provide for court costs and attorney's fees as a sanction against persons who fail to produce the subpoenaed documents.[11] Finally, although Peacock has filed a motion for oral argument related to the present motion, seeking oral argument based upon "the nature of the documents requested, a related motion currently pending against Coral Resources, Inc.,

---

[10] Although Peacock requests that all of the documents subpoenaed be produced to the Court for *in camera* inspection at this time, the Court notes (and even Peacock must obviously realize) that certain of the documents in question are indeed subject to the accountant-client privilege. Thus, the better and less burdensome approach for the Court is to first allow Kleinpeter to submit a supplemental privilege log so that Peacock can determine specific documents for which it can legitimately contest Kleinpeter's claim of privilege, and then, if the parties are unable to agree as to whether certain documents are privileged, that smaller set of documents can be submitted to the Court for *in camera* review.

[11] *See, S.E.C. v. Kimmes*, 1996 WL 734892 (S.D.N.Y. 1996)(Rule 45 itself contains no provision for awarding attorneys' fees or sanctions to a party that has prevailed on a motion to compel compliance with a subpoena duces tecum. Only one section of Rule 45 authorizes the imposition of sanctions against a nonparty for failure to comply with a subpoena, and such provision relates solely to deeming such conduct a contempt of the court from which the subpoena issued. There is no other provision within Rule 45 that authorizes a court either to award attorneys' fees or to turn to the terms of Rule 37(a) for such authorization. Furthermore, the express language of Rule 37(a) itself does not include motions to compel compliance brought pursuant to Rule 45 and does not authorize a court to impose costs and sanctions against a nonparty for noncompliance with a subpoena); *International Brotherhood of Electrical Workers, Local 474 v. Eagle Electric Co.*, 2007 WL 622504 (W.D. Tenn. 2007)(In the case of a non-party, Rule 45(e), which provides that the failure of any person without adequate excuse to obey a subpoena may be deemed a contempt of the court from which the subpoena issued, is the only authority provided to sanction for failure to comply with a subpoena). Thus, while a non-party may be held in contempt of court for failure to comply with a subpoena, he or she is not subject to costs and attorney's fees for failure to comply with a subpoena under Rule 45.

and the issues in dispute in the underlying litigation," the Court finds that it can resolve the present dispute in the manner set forth above without the necessity of oral argument. Furthermore, the undersigned is unaware of any motion to compel currently pending in this district against Coral Resources. At present, if such a motion exists, it has not been referred to the undersigned for a ruling and therefore would not be the subject of any oral argument before the undersigned. Accordingly, Peacock's motion for oral argument should be denied.

Accordingly;

**IT IS ORDERED** that the Motion to Compel Compliance with Subpoena (R. Doc. 1) filed by plaintiff, Linda Peacock, is hereby **GRANTED IN PART** and **DENIED IN PART**, reserving Peacock's right to file a new motion at a later date if, after receiving a supplemental privilege log from Thomas W. Kleinpeter, C.P.A. and Thomas W. Kleinpeter, Jr., Inc., Peacock still contends that there are documents listed therein which are not privileged.

**IT IS FURTHER ORDERED** that Kleinpeter shall produce, within twenty (20) days of the date of this Order, a supplemental privilege log, wherein he identifies not only the date, the author, and all recipients of each document responsive to Peacock's subpoena, but also describes the document's subject matter, purpose for its production, and a specific explanation of why the document is privileged or immune from discovery.

**IT IS FURTHER ORDERED** that Peacock's request for court costs and attorney's fees associated with this motion is hereby **DENIED**.

**IT IS FURTHER ORDERED** that the Motion for Oral Argument (R. Doc. 5) filed by plaintiff is **DENIED**.

Signed in chambers in Baton Rouge, Louisiana, March 10, 2008.

_____
**MAGISTRATE JUDGE CHRISTINE NOLAND**